IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA WAGNER,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | No. C 09-0008 CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Gloria Wagner seeks this Court's review of the Social Security Commissioner's decision denying her disability benefits. The Administrative Law Judge ("ALJ") concluded that Plaintiff did not suffer any severe impairments and therefore was not entitled to benefits. Plaintiff now moves for summary judgment, arguing that the ALJ's conclusion was not supported by substantial evidence and that the ALJ failed to take into account her subjective reports of pain. Defendant has also moved for summary judgment, arguing that the ALJ's decision was adequately supported by the evidence and was free of legal error.

For the reasons explained below, this Court concludes that the ALJ's decision should stand. Therefore, Defendant's motion for summary judgment is granted and Plaintiff's is denied.

**1.     Procedural History**

On July 29, 2005, Wagner filed a Title II application for a period of disability and disability benefits, alleging that her disability began on September 30, 2003. A hearing began on August 16, 2007, and was continued to February 29, 2008. A number of witnesses testified, including Plaintiff, a board certified internist, and two vocational experts.

At the hearing, Plaintiff amended her application for benefits to allege an onset date of July 29, 2005. It also became clear at the hearing that as of the third quarter of 2007, and continuing for more than six months, Plaintiff was engaged in substantial gainful activity. She worked as a shuttle bus driver for Chevron, earning a total of $17,139.00. Because such employment prevents Plaintiff from receiving benefits for that time period, the ALJ limited her eligibility for benefits to the period between July 29, 2005, and August of 2007. Plaintiff does not dispute this limitation.

The ALJ issued an order on May 12, 2008, concluding that Plaintiff failed to establish her entitlement to benefits. AR 96-103. First, the ALJ explained that Plaintiff's complaints referred in primary part to "neck and back pain which are unsupported by underlying findings." Id. at 99. The ALJ did note that one examination "indicated possible radiculopathy," but he concluded that this examination was insufficient on its own to establish a medical basis for Plaintiff's complaints. Id. at 100. This was so, in part, because the examination "recommended clinical co-relation by a MRI[,] however none of her treating or attending physicians found this necessary to perform." Id.

Given the lack of extensive medical documentation of Plaintiff's condition, the ALJ then turned to her subjective reports of pain. First, he concluded that "the nature, onset and duration of [Plaintiff's] alleged complaints associated with pain and weakness in her upper extremities, her left arm going 'dead', pain in her left side, dizziness, headaches and a general inability to function [are] overall vague and non-specific." Id. at 101. The ALJ further concluded that, given that the only piece of medical evidence supporting some of these complaints was itself inconclusive, "there is really no evidence of an underlying impairment likely to cause the symptoms alleged." Id. Instead of corroborating her

2

1  subjective complaints, the ALJ concluded that the medical record "appears to be a searching
2  by her various physicians as to what is causing her multiple complaints with no clear clinical
3  or physical correlation to date." Id.

4  Next, the ALJ pointed to the fact that Plaintiff was able to maintain substantial gainful
5  employment as of August 2007 despite her allegations of ongoing pain. Id. The ALJ
6  concluded that while "the claimant's medically determinable impairments could . . . produce
7  some of her alleged symptoms; . . . the claimant's statements concerning the intensity,
8  persistence and limiting effects of these symptoms are not credible to the extent they are
9  inconsistent with finding that the claimant has no severe impairment or combination of
10 impairments as discussed herein." Id.

11 Finally, the ALJ looked to other medical evidence to corroborate his conclusion. Dr.
12 Jaskaran Momi conducted what the ALJ considered to be "the most complete physical
13 examination in the record," id. at 102, and concluded that the claimant's subjective
14 complaints "simply were not supported by the underlying physical findings," id. Similarly,
15 Dr. Marinos concluded that while Plaintiff" was mildly to moderately depressed" after being
16 released from prison, "this would improve over the next few months." Id. Because there
17 was no evidence in the record that Plaintiff subsequently sought any treatment for psychiatric
18 concerns, the ALJ concluded that there were no grounds to find a serious disability in
19 relation to any such concerns.

20 **2.     Standard of Review**

21 This Court will reverse an ALJ's decision to deny social security benefits only if the
22 decision is based on legal error or unsupported by substantial evidence. Magallanes v.
23 Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The "substantial evidence" standard requires less
24 than a preponderance but more than a scintilla; it demands "such relevant evidence as a
25 reasonable mind might accept as adequate to support a conclusion." Id. The Court must
26 review the record as a whole, "weighing both the evidence that supports and that which
27 detracts from the ALJ's conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
28

3

1995). Where the record is susceptible to more than one interpretation, this Court must uphold the ALJ's interpretation of it. Id.

**3.   Discussion**

The ALJ concluded that Plaintiff's ailments were not severe, and hence did not qualify her for benefits. An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for at least a consecutive twelve month period. See 20 C.F.R. § 416.920(a)(4)(ii); 61 Fed. Reg. 34,468, 34,469 (1996). An impairment "is considered 'not severe' if it is a slight abnormality[] that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." 61 Fed. Reg. at 34,469.

Plaintiff contends that "[t]he medical records from treating sources demonstrates [sic] that Wagner suffers from a severe physical impairment." In support, Plaintiff points to "Dr Carmichael's notations of neck and right arm pain" and to "[a]n EMG [that] was consistent with chronic right c5 radiculopathy." Plaintiff's Brief at 5. Plaintiff goes on to suggest that Dr. Carmichael's opinion, as she was the treating physician, is entitled to significant deference. See, e.g., Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, as the Commissioner points out, it is important to look specifically at Dr. Carmichael's reports.

First, many of the citations provided by Plaintiff are to Dr. Carmichael's record of Plaintiff's assertions that she was in pain. These notes are by no means medical diagnoses, but rather simply report the fact that Plaintiff made complaints. As explained by a regulation cited by Plaintiff herself, "symptoms, such as pain . . . , will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence . . . that he or she has a medically determinable physical or mental impairment." 61 Fed. Reg. at 34,469. The only medical diagnosis hinted at in Dr. Carmichael's reports is "an EMG that showed a right cervical radiculopathy." AR at 505. However, the records in the AR never go so far as to make a diagnosis, nor does Carmichael apparently conclude that the EMG on its own is sufficient evidence of a severe medical impairment. In one record she appears to doubt such a finding because "the flat plate of the

4

1   C-spine regular x-ray showed mild spondylosis only." Id. In other records Dr. Carmichael
2   indicates that a reliable diagnosis could not be made in the absence of an MRI, which
3   Plaintiff declined to have. Id. The EMG results themselves suggested corroborating the test
4   with an MRE. Id. at 518. Moreover, it appears elsewhere that Dr. Carmichael believed the
5   EMG results could have some other explanation. See id. at 516. As the ALJ noted, the
6   records reflect that Dr. Carmichael was attempting to explain Plaintiff's reported symptoms,
7   but was ultimately unable to establish a medical explanation.[1]

8        Given that Dr. Carmichael's records did not reflect a medical explanation for
9   Plaintiff's complaints, Plaintiff also places some emphasis on a questionnaire submitted by
10  Dr. Carmichael after the first day of Plaintiff's hearing before the ALJ. Plaintiff argues that
11  this questionnaire shows that Dr. Carmichael believed "Wagner was significantly limited as a
12  result of [her] impairments." Plaintiff's Brief at 5. Indeed, that questionnaire does reflect
13  that Dr. Carmichael believed Plaintiff suffered some moderate limitations. However, this
14  questionnaire does nothing more than establish that Dr. Carmichael believed Plaintiff's
15  complaints; it does not establish a medical basis for those complaints. As noted above,
16  unless the individual can "establish[] by objective medical evidence . . . that he or she has a
17  medically determinable physical or mental impairment[] and that the impairment[] could
18  reasonably be expected to produce the alleged symptom," those symptoms on their own
19  cannot establish a severe impairment. 61 Fed. Reg. at 34,469. Indeed, the ALJ left the
20  record open for thirty days after the hearing in order for Dr. Carmichael to submit just that
21  sort of evidence: something tying Plaintiff's complaints to a medical condition. See AR at 33
22  (the ALJ requesting that Dr. Carmichael "write a letter and . . . say what she thinks is wrong
23  with [Plaintiff], . . . and if you could work or not and what your limitations are). Finally,
24  because Dr. Carmichael's checklist was not a narrative and provided only minimal context
25  for the doctor's conclusion, it was permissible to afford that checklist relatively little

---

[1] While the ALJ did not rely on this fact, it bears noting that Dr. Carmichael apparently believed Plaintiff to be exaggerating her symptoms. See, e.g., AR 523, 525; see also Thomas v. Barnhart, 278 F.3d 948, 959 (9th Cir. 2002) (noting that claimant's "efforts to impede accurate testing of her limitations" showed that she was not credible).

5

evidentiary weigh. See Batson v. Comm'r of Social Security Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Therefore, even though the opinion of a treating physician is afforded special weight, the ALJ cited persuasive reasons for disagreeing with her conclusions. See Batson, 359 F.3d at 1195 (noting that "the ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted"). Further corroborating the ALJ's decision is the fact that other medical evidence supports the conclusion that Plaintiff's complaints do not have an identified medical basis. Dr. Jaskaran Momi examined the plaintiff and did not identify any objective medical condition that could be expected to lead to those complaints.

      As to Plaintiff's arguments regarding a potential psychiatric impairment, the medical record is even weaker. Plaintiff points to Dr. Janine Marinos's opinion, claiming that her findings support a conclusion that Plaintiff suffers a serious disability. However, Dr. Marinos concluded that while Plaintiff "would likely have mild-moderate difficulty at this time maintaining concentration, interacting with others, and coping with stresses in a routine work setting," she went on to conclude that she "expect[s] her mental state to improve over the coming months." AR 378. Dr Marinos also seemed to suggest that Plaintiff's difficulties were related to her recent release from prison. Perhaps most importantly, the ALJ noted that Plaintiff's performance as a shuttle-bus driver without any apparent difficulty in "maintaining concentration, interacting with others, [or] coping with stresses" constitutes substantial evidence that Plaintiff's psychiatric condition did not constitute a severe disability. Moreover, Plaintiff's testimony at the hearing did not reflect any psychiatric difficulties relating to her performance as a bus driver.

      Next, Plaintiff objects to the fact that the ALJ did not find her reports of her symptoms to be credible. She argues that because she presented evidence "which wholly associates her subjective symptoms with a clinically demonstrated impairment, credible subjective testimony should contribute to a determination of disability." Plaintiff's Brief at 8. Plaintiff overstates her evidence. The evidence simply does not establish that her symptoms are "wholly associate[d]" with a "clinically demonstrated impairment." As noted above, the

1 "medical evidence" cited by Plaintiff is largely a doctor's record of what Plaintiff claimed
2 her symptoms to be.

3 The closest Plaintiff gets to a "clinically demonstrated impairment" is the EMG test
4 noted above. However, as observed even by Dr. Carmichael, that inconclusive test did not
5 explain the full panoply of symptoms reported by Plaintiff. Those symptoms therefore
6 qualify as "excess pain" testimony. Under Varney v. Secretary of Health & Human Services,
7 846 F.2d 581 (9th Cir. 1988) (superseded by statute on other grounds), "the Secretary may
8 decide to disbelieve or disregard excess pain testimony" if the finding is "supported by
9 specific findings." Id. at 584. The ALJ in this case provided specific findings. Most
10 importantly, the ALJ concluded that Plaintiff's ability to maintain gainful employment
11 reveals that her testimony regarding her limitations is not credible. Moreover, the ALJ found
12 her reports of pain to be less credible because they were vague and non-specific. Finally, in
13 line with factors enumerated in Social Security Ruling 96-7p, the ALJ considered Plaintiff's
14 daily activities, factors that precipitate and aggravate the symptoms, and the steps taken by
15 Plaintiff to alleviate the symptoms. Given that Plaintiff performed regular chores at home,
16 that there was "no evidence of precipitation or aggravation of her symptoms," that she never
17 had any surgery or inpatient treatment to address these symptoms, the ALJ concluded that
18 her excess pain testimony was not credible. Under case law and the relevant regulations, this
19 amounts to substantial evidence and justifies the ALJ's conclusion. See, e.g., Tommasetti v.
20 Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (concluding that vague testimony can support an
21 adverse credibility finding); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence
22 of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity
23 of an impairment.")

24 **4. Conclusion**

25 For the reasons explained above, the Government's motion for summary judgment is
26 GRANTED, and Plaintiff's is DENIED. The ALJ thoroughly analyzed the medical record
27 and fairly considered all the testimony provided at the hearing. While Plaintiff is correct that
28 the ALJ's adverse credibility finding must be supported by specific findings, the ALJ more

7

than satisfied this standard. Given the inconclusive nature of the medical evidence, and Plaintiff's lack of credibility in her testimony regarding her symptoms, substantial evidence supports the ALJ's conclusion that Plaintiff did not suffer a severe disability.

**IT IS SO ORDERED.**

Dated: March 1, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE